IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kehoe Component Sales, Inc.
d/b/a/ Pace Electronic Products,

    Plaintiff,

vs.

Best Lighting Products, Inc.,

    Defendant.

Case No. 2:08-cv-752

JUDGE GRAHAM

<u>ORDER</u>

    Kehoe Component Sales, Inc. d/b/a Pace Electronic Products (Pace) is a company with its principal place of business in the State of New York. Pace brought suit in the United States District Court for the Southern District of Ohio against the Ohio based company Best Lighting Products, Inc. (Best), for breach of a supply agreement between the two companies. Best then filed several counterclaims against Pace. It also filed counterclaims against Pace's President F. Patrick Kehoe personally for committing or directing tortious interference with contractual relations, misappropriation of trade secrets, fraud, and conversion. All parties acknowledge this court's personal jurisdiction over Pace based on its contractual relationship with Best. Mr. Kehoe, however, denies that personal jurisdiction exists as to him, and has filed a motion to dismiss the counterclaims made against him. Because sufficient uncontested facts exist to establish specific personal jurisdiction over Mr. Kehoe, the motion to dismiss is denied.

## I. FACTS

Pace manufactured emergency lighting and associated products for Best prior to executing the January 2007 Supply Agreement underlying this action. April 23, 2009 Dec. of Alvin Katz, ¶ 3. A dispute arose over whether Pace had been selling lighting products to Best's customers in violation of written assurances to Best that they would not. Id. at ¶ 4. This dispute led to negotiations and ultimately the Supply Agreement underlying this action. Id. at ¶ 5. During a meeting in Ohio, Mr. Kehoe allegedly made several representations on behalf of Pace that were incorporated into the final agreement. Id. at ¶ 10. Among those promises were: that Pace would not sell lighting products to any of Best's North America customers without written authorization, Best's tooling would only be used for Best's benefit, and the non-compete clause would be in effect for one year after the agreement was terminated. Id. Best argues that these representations, made in Ohio, were violated, and thus Mr. Kehoe should be subject to personal jurisdiction in Ohio.

F. Patrick Kehoe, a New York resident, argues that the claims against him should be dismissed because this court lacks personal jurisdiction over him. See Fed. R. Civ. P. 12(b)(2). Because Mr. Kehoe resides in New York, and does not have an office or home in Ohio, April 6, 2009 Aff. of F. Patrick Kehoe, ¶11, there is no claim to general personal jurisdiction over Mr. Kehoe. Mr. Kehoe agrees that the corporate shield doctrine is not a bar to specific personal jurisdiction over him in this case. He argues, however, that his relationship to the corporation cannot substitute for personal jurisdiction over him individually. Kehoe, counter defendant, and the counter plaintiff, Best, have both submitted affidavits on the personal jurisdiction issue.

Based on the affidavits filed by the parties, the court recognizes the following facts are undisputed. Mr. Kehoe, over the course of the 10-year business relationship between the

companies, has traveled to Ohio several times to meet with Best's officers. April 6, 2009 Aff. of F. Patrick Kehoe, ¶ 6. However, those visits occurred prior to the negotiation of the agreement at issue in this case. Id. The parties began negotiating the disputed agreement for settling a disagreement between the companies in 2006. Id. at ¶ 4; April 23, 2009 Dec. of Alvin Katz, ¶ 4. Because Best's officers were unavailable, Mr. Kehoe's first trip to Ohio in connection with the negotiations resulted in no meeting. April 6, 2009 Aff. of F. Patrick Kehoe, ¶¶ 7-8. Mr. Kehoe later made second trip to Ohio that did result in negotiations. May 20, 2009 Aff. of F. Patrick Kehoe, ¶ 4; April 23, 2009 Dec. of Alvin Katz, ¶ 7. Negotiations primarily took place via e-mail and telephone between New York and Ohio. April 6, 2009 Aff. of F. Patrick Kehoe, ¶ 5; April 23, 2009 Dec. of Alvin Katz, ¶ 6. The supply agreement became effective January 10, 2007. April 6, 2009 Aff. of F. Patrick Kehoe, ¶ 4. In the agreement, Mr. Kehoe, as CEO of Pace, expressly bound Pace to Ohio law and jurisdiction, but he made no agreement for himself.

The following are contested facts, alleged by Best. Best alleges that final terms of the agreement were negotiated at their meeting in Ohio, and that Mr. Kehoe made critical assurances that were incorporated into the final agreement. April 23, 2009 Dec. of Alvin Katz, ¶ 10. Among those promises were: that Pace would not sell lighting products to any of Best's North America customers without written authorization, Best's tooling would only be used for Best's benefit, and the non-compete clause would be in effect for one year after the agreement was terminated. Id.

The following are contested facts alleged by Mr. Kehoe. Pace's CFO, and not Mr. Kehoe, was the leader of the negotiations for the company. April 6, 2009 Aff. of F. Patrick Kehoe, ¶ 5. Mr. Kehoe denies extrinsic statements, including "on my mother's saintly grave," were used to induce agreement, and argues that the only agreements between the parties are in

3

the supply agreement.  Id. at ¶ 10.  Mr. Kehoe states that negotiations during the second Ohio trip were insignificant.  May 20, 2009 Aff. of F. Patrick Kehoe, ¶¶ 4, 6, & 8.  In support, Mr. Kehoe points out that Dawn Smith, Pace's primary sales person on the Best account, was not present for that negotiation.  Id. at ¶ 4.  Mr. Kehoe states the Ohio meeting took place on September 20, 2006, four months before the Agreement was finalized on January 10, 2007.  May 20, 2009 Aff. of F. Patrick Kehoe, ¶ 5.  Best does not specifically address when the meeting took place. Finally, Mr. Kehoe denies the allegation that he assured that Pace would not compete "on my mother's saintly grave."  Id. at ¶ 10.  In ruling on this motion, the court is required to construe the facts in favor of Best.  See infra.

## II. STANDARD OF REVIEW

The party asserting that the court has personal jurisdiction has the burden of proving it. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991).  Where, as here, the court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, the burden on the counter-plaintiff is "relatively slight."  Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988).  Best, therefore, "must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."  Theunissen, 935 F.2d at 1458.  In the present case, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and we should not weigh "the controverting assertions of the party seeking dismissal."  Id. at 1459; Air Products and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007).

## III. OHIO LONG ARM STATUTE

### A.  Legal Standard

In analyzing the question of specific personal jurisdiction, federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over

4

parties, subject to constitutional due process requirements. Air Prods., 503 F.3d at 550 (citing Lanier v. Am. Bd. of Endodontics, 843 F.2d 901, 909 (6th Cir. 1988)). The Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause. Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998) (citing Goldstein v. Christiansen, 70 Ohio St.3d 232, 1994 Ohio 229, 638 N.E.2d 541, 545 n. 1 (1994)). This court must therefore engage in a two-step process for determining personal jurisdiction. Air Prods., 503 F.3d at 550. First, the court must determine whether Ohio's relevant long-arm statute authorizes the exercise of jurisdiction over the Defendant. Id. Second, the court must determine whether exercise of that jurisdiction comports with constitutional due process. Id.

> Ohio's long-arm statute provides:
>
> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Rev. Code § 2307.382(A).

**B. § 2307.382(A)(1)**

The Ohio Long-Arm Statute allows for specific personal jurisdiction over any person who conducts business in the state of Ohio. O.R.C. § 2307.382(A)(1). A person "transacting any business in [Ohio]" either directly or through an agent is subject to personal jurisdiction under §2307.382(A)(1). Burnshire Dev., LLC v. Cliffs Reduced Iron Corp., 198 Fed. Appx. 425, 429 (6th Cir. Ohio 2006). Mr. Kehoe, over the course of the 10-year business relationship between the companies, has traveled to Ohio several times to meet with Best's officers. April 6, 2009 Aff. of F. Patrick Kehoe, ¶ 6. This suit and the contract in question both arise out of the business relationship Mr. Kehoe cultivated for 10 years. Specifically, Mr. Kehoe came to Ohio in connection with the negotiations, although his first trip did not result in a meeting. April 6, 2009 Aff. of F. Patrick Kehoe, ¶¶ 7-8. Mr. Kehoe later made a second trip to Ohio that did result in negotiations. May 20, 2009 Aff. of F. Patrick Kehoe, ¶ 4; April 23, 2009 Dec. of Alvin Katz, ¶ 7. Mr. Kehoe negotiated the final terms of the agreement in Ohio. April 23, 2009 Dec. of Alvin Katz, ¶ 10. Mr. Kehoe made representations, in Ohio, that induced Best to enter into the contract. April 23, 2009 Dec. of Alvin Katz, ¶¶ 9, 10. Each action by Mr. Kehoe demonstrates that he, at least in part, induced, negotiated, and signed the agreement in Ohio. Thus, jurisdiction exists under O.R.C. §2307.382(A)(1).

### C. § 2307.382(A)(3)

The Ohio Long-Arm Statute allows for specific personal jurisdiction over any person who causes tortious injury by an act or omission in Ohio. O.R.C. § 2307.382(A)(3). "The scope of subsection (3) is limited to a tortious occurrence in which the causing act or omission as well as the resulting injury occur in Ohio. Subsection (3) contemplates that the act or omission causing tortious injury must be committed in Ohio." Ginter v. Strickland, 89 F.R.D. 70, 73 (S.D. Ohio 1981) (quoting Busch v. Service Plastics, Inc., 261 F. Supp. 136, 140 (N.D.Ohio 1966)). Mr. Kehoe allegedly fraudulently induced Best to sign the agreement, and personally signed the agreement in Ohio. These alleged actions are sufficient to establish that Mr. Kehoe took action in Ohio, and that action caused injury to the Ohio company Best.

Mr. Kehoe engaged in a negotiation that, at minimum, facilitated the opportunity for Mr. Kehoe to engage in the alleged tortious activity. This negotiation was essential to the agreement and included personal representations by Mr. Kehoe that were allegedly used to fraudulently induce acquiescence to the agreement. April 23, 2009 Dec. of Alvin Katz, ¶ 10. Best alleges that Mr. Kehoe obtained confidential information while in Ohio by inducing and signing a contract in Ohio. Mr. Kehoe then allegedly used such information to the Ohio-based company's detriment. This allegation is sufficient to establish jurisdiction under § 2307.382(A)(3). Huntington Copper Moody & Maguire, Inc. v. Cypert, 04-CV-751, 2005 U.S. Dist. LEXIS 43781 (S.D. Ohio Sept. 20, 2005). The acts inducing an agreement and the signing of the agreement, in Ohio, are alleged to be fraudulent, and as long as the confidential information was obtained because of behavior in Ohio, such as inducing and signing a contract, then the actual use of the information may be outside of Ohio. Id.; Gor-Vue Corp. v. Hornell Elektrooptik AB,

634 F. Supp. 535, 537-538 (N.D. Ohio 1986). Thus, jurisdiction exists under O.R.C. § 2307.382(A)(3).

### D. § 2307.382(A)(6)

Even if the information is not obtained in Ohio, the Ohio Long-Arm Statute allows for specific personal jurisdiction over any person who allegedly causes tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state. O.R.C. § 2307.382(A)(6). Mr. Kehoe's alleged actions in this case are very similar to several other cases recognizing specific personal jurisdiction.

First, a willful breach of a business contract is itself sufficient under § 2307.382(A)(6). Scotts Co. v. Aventis S.A., 145 Fed. Appx. 109, 112 (6th Cir. Ohio 2005). It is particularly strong support when the breached representations were incorporated into the final contract. Id. at 114-15; April 23, 2009 Dec. of Alvin Katz, ¶¶ 9, 10. Best alleges Mr. Kehoe then willfully, both personally and by direction, breached their business contract, which is sufficient to establish personal jurisdiction under this section.

Second, a tort action can be brought in Ohio when tortious acts are intentionally and purposefully directed toward a party located and injured in Ohio. Reynolds v. International Amateur Ath. Fed'n, 23 F.3d 1110, 1119 (6th Cir. 1994). Best alleges that Mr. Kehoe made false representations, in Ohio, that Pace would not steal Best's business, and would stop undercutting Best. April 23, 2009 Dec. of Alvin Katz, ¶¶ 9, 10. Best alleges that these fraudulent statements included a statement Mr. Kehoe made that "on his mother's saintly grave" his company would stop undercutting Best's business. Fraudulent statements certainly can be said to have been "intentionally and purposefully directed . . . toward a Plaintiff in Ohio" since Best is an Ohio

8

based company.  See Reynolds, 23 F.3d at 119.  This is particularly true when the assurances were made in Ohio.  However, even if they were made in an e-mail sent from Mr. Kehoe in New York to the Best in Ohio, similar allegations of fraudulent communications regarding a contract have been specifically held to establish personal jurisdiction under § 2307.382(A)(6).  See Ashton Park Apartments, LTD v. Lebor, 252 F. Supp.2d 539, 547-48 (N.D. Ohio 2003).

Third, Mr. Kehoe allegedly converted tools of Best by refusing to return them upon Best's request.  Second Amended Counter Claim at ¶ 30.  Conversion of a resident's property in connection with a contract executed in Ohio, as here, with regard to the tools and business records, is sufficient to base a finding of personal jurisdiction per § 2307.382(A)(6).  Innovative Digital Equipment, Inc. v. Quantum Technology, Inc., 597 F. Supp. 983, 987 (N.D. Ohio 1984).

Finally, acts of conversion or fraud establish jurisdiction, under § 2307.382(A)(6), even if allegedly committed outside of Ohio if Mr. Kehoe would have known that the company and its losses would be in Ohio.  Herbruck v. LaJolla Capital, No. 19586, 2000 Ohio App. LEXIS 4668, 2000 WL 1420282 at * 3 (Ohio Ct. App. Sept. 27, 2000).  All of the alleged injuries to Best occurred in Ohio; giving rise to specific personal jurisdiction.  VanCamp v. VanCamp, 2001 Ohio 8617, 2002 WL 4472 at * 4-5 (Ohio Ct. App. Dec. 31, 2001); Gor-Vue, 634 F. Supp. at 537-538.

## IV. DUE PROCESS

### A. Legal Standard

After finding jurisdiction under several prongs of Ohio's long arm statute, the court turns to the Due Process concerns of the Fourteenth Amendment of the United States Constitution.  In examining the due process concerns for specific personal jurisdiction over an out-of-state defendant, the central inquiry is whether the defendant established "certain minimum contacts

with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." Air Products, 503 F.3d at 549-50. An exercise of specific jurisdiction is proper where the claims arise from or are related to the defendant's contacts with the forum state. Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). For this due process inquiry, the Sixth Circuit has established a three-part test to determine whether specific jurisdiction exists over a nonresident defendant:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968); Intera, 428 F.3d at 615.

**B. Analysis**

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or cause a consequence in the forum state**.** Harris v. Lloyds TSP Bank, PLC, 281 Fed. Appx. 489, 494 (6th Cir. 2008) (quoting So. Machine, 401 F.2d at 381). Mr. Kehoe did both. Mr. Kehoe, over the course of the 10-year business relationship between the companies, traveled to Ohio several times to meet with Best's officers. April 6, 2009 Aff. of F. Patrick Kehoe, ¶ 6. In addition, when Mr. Kehoe transacted business by negotiating and executing a contract via telephone calls and e-mails to an Ohio resident, he has purposefully availed himself of the forum by creating a continuing obligation in Ohio. See American Greetings Corp. v.

Cohn, 839 F.2d 1164, 1170 (1988); In- Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 228, 235 (6th Cir. 1972) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 479, (1985)).

By developing the business relationship with Best, and negotiating, inducing, and signing a contract in Ohio, Mr. Kehoe purposefully availed himself of the privilege of acting in Ohio. If Mr. Kehoe allegedly committed a tortious act within Ohio, he necessarily would have purposely availed himself of the privilege of being in Ohio. Priess v. Fisherfolk, 535 F. Supp. 1271, 1274 (S.D. Ohio 1982). Finding purposeful availment in this case is consistent with prior Sixth Circuit case law. See In-Flight Devices, 466 F.2d at 226-27 (finding purposeful availment where the defendant negotiated a substantial business contract for the manufacture of goods with a firm it knew to be in the forum state); Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998) (finding purposeful availment where "a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to a resident of the forum state."). Thus, if Mr. Kehoe fraudulently induced Best into the agreement during his second trip to Ohio, as Best alleges, Mr. Kehoe was purposefully availing himself of the privilege of doing business in Ohio.

Further, because Best is an Ohio based company and because Mr. Kehoe knew he was dealing with an Ohio company, Mr. Kehoe would know his actions would, as it allegedly did, cause harm in Ohio. Reynolds, 23 F.3d at 1119; Herbruck, 2000 WL 1420282 at * 3. It is undisputed that if the alleged injury occurred to Best, that the harm occurred in Ohio, giving rise to specific personal jurisdiction. Gor-Vue, 634 F. Supp. at 537-538. Mr. Kehoe's actions would therefore also fulfill the alternative requirement of causing a consequence in Ohio.

Second, the cause of action must arise from the defendant's activities in the forum state. The Sixth Circuit has said: "entering of a contractual relationship with an Ohio corporation is

11

necessarily the very soil from which the action for breach grew." In-Flight Devices, 466 F.2d at 229; see also Cole, 133 F.3d at 436. If Mr. Kehoe defrauded Best, directed breach of contract, and converted materials and information as Best alleges, these causes of action certainly arise from the contract negotiations and business activities in Ohio and establish personal jurisdiction.

Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. In light of precedent, the assertion of jurisdiction over Mr. Kehoe is fundamentally reasonable and constitutional. Cole, 133 F.3d at 436; see also McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957); In-Flight Devices, 466 F.2d at 235-36. Although the Sixth Circuit has not articulated a "general standard by which courts may distinguish between the fair and the unfair -- the very flexibility of the terms deliberately chosen by the Supreme Court in International Shoe precludes the possibility that definitive standards can be created," this court finds that, under the present circumstances, personal jurisdiction over Mr. Kehoe is fair. In-Flight Devices, 466 F.2d at 232.

First, this question must involve consideration of the extent of Ohio's interest in this controversy. In-Flight Devices, 466 F.2d at 232. It cannot be disputed that a state has an interest in resolving a suit brought by one of its residents. Id.; see Thompson v. Ecological Science Corp., 421 F.2d 467, 470 (8th Cir. 1970); Washington v. Hospital Service Plan of New Jersey, 345 F.2d 105, 108 (D.C. Cir. 1965). This case is distinguishable from cases where Ohio's interest was outweighed by the interest of the defendant; such as between a non-resident consumer and an Ohio mail order company. In-Flight Devices, 466 F.2d at 232. In such a case, the Ohio court should not assert jurisdiction over the consumer because of the hardship. Id. However, here, Mr. Kehoe is an essential person in the case regardless of his personal role. As

Pace's CEO, he will be integral to the process and proceedings and it is fair to exercise jurisdiction over him. See In-Flight Devices, 466 F.2d at 234 (there is no risk of "the sort of inability to litigate which leads to the acceptance of default judgments" that courts avoid in issues of personal jurisdiction).

Second, Mr. Kehoe is in the position of the seller of services, which courts have found indicate an increased fairness for maintaining jurisdiction. In-Flight Devices, 466 F.2d at 232. The seller "often initiates the deal, tends to set many, if not all of the terms on which it will sell, and, of course, bears the burden of producing the goods or services." Id. The buyer is often more passive, simply placing an order and agreeing to pay a sum upon receipt of the goods or services. Id. Thus, it is the general policy to find personal jurisdiction over the seller who sought out the business and took the responsibility of performing a service.

Third, another factor in making the assertion of jurisdiction over a non-resident fair is the lack of surprise from the use of long-arm jurisdiction. In-Flight Devices, 466 F.2d at 233. Mr. Kehoe, over the course of the 10-year business relationship between the companies, has traveled to Ohio several times to meet with Best's officers. April 6, 2009 Aff. of F. Patrick Kehoe, ¶ 6. Mr. Kehoe also made trips to Ohio for the specific purpose of negotiating this contract. April 6, 2009 Aff. of F. Patrick Kehoe, ¶¶ 7-8. Mr. Kehoe further acknowledged the reasonableness of Ohio jurisdiction when he bound his company to it under the agreement. Although he did not expressly bind himself personally to Ohio, again, as CEO, he had to expect that he could be subjected to litigation in Ohio. These factors demonstrate the lack of surprise, and this court finds it reasonable to maintain jurisdiction over Mr. Kehoe.

### C. Corporate Shield

The fiduciary shield doctrine states that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." Weller v. Cromwell Oil Co., 504 F.2d 927, 929 (6th Cir. 1974). Mr. Kehoe argues that because he has contact within a state only by virtue of his acts as a fiduciary of a corporation, he may be shielded from the exercise of personal jurisdiction over him personally on the basis of that conduct. However, Mr. Kehoe is not protected by the doctrine because personal jurisdiction is not based simply upon jurisdiction over Pace. Rather, it is based on all of Mr. Kehoe's actions that allegedly took place in Ohio or caused injury in Ohio. That he committed the actions in his capacity as an officer of Pace does not prevent the exercise of jurisdiction over him. The Sixth Circuit has addressed this very issue:

> While it is true that 'jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation,' Weller v. Cromwell Oil Co., 504 F.2d at 929, we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.

Balance Dynamics Corp. v. Schmitt Industries, Inc., 204 F.3d 683, 698 (6th Cir. 2000). Here, Mr. Kehoe personally made efforts and representations to Best in Ohio on behalf of Pace. Under Balance Dynamics, this is sufficient for personal jurisdiction over Mr. Kehoe.

## V. CONCLUSION

For the forgoing reasons, counter defendant Kehoe's motion to dismiss for lack of personal jurisdiction (doc. 37) is DENIED.

                                                            _s/ James L. Graham_
                                                            JAMES L. GRAHAM
                                                            United States District Judge

DATE: August 19, 2009