IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kehoe Component Sales, Inc., :

    Plaintiff, :

  v. : Case No. 2:08-cv-752

Best Lighting Products, Inc., : JUDGE GRAHAM

    Defendant. :

ORDER

This case is before the Court to consider the amended motion to compel discovery which was filed by defendant, Best Lighting Products, Inc., on November 27, 2009. The motion is fully briefed. For the following reasons, the Court will grant the motion to compel and will also grant the parties' request to extend the discovery schedule.

## I. Background

According to the amended complaint which was filed on November 5, 2008, plaintiff Kehoe Component Sales, which does business as (and will be referred to in this Order as) Pace Electronic Products, sells electronic components to "consumer, automobile, agriculture and other high technology industries." ¶6. Defendant Best Lighting was one of its customers. The parties signed a contract for the sale and purchase of electronic goods in 2007. Pace asserts that the contract required minimum purchases of $7,000,000 in its first year, and that Best Lighting's purchases fell far short of that requirement. Further, Pace claims that Best did not pay for all of its purchases within ninety days of shipment. Pace sought damages both for the unpaid invoices (almost $900,000) and for its lost profits on the sales it should have made had Best Lighting not

breached the contract's minimum purchase provision.

Not surprisingly, Best Lighting denies the material allegations of the complaint. It also claims, both as a defense to Pace's claims and as the basis for one of its counterclaims, that Pace, despite representations to the contrary, began to sell competing equipment directly to Best Lighting's customers using the knowledge it gained of those customers and their needs from its relationship with Best Lighting. That knowledge included knowledge of the price at which Best Lighting was selling its products, so that Pace could undersell Best Lighting and could (and did) place Best Lighting at a competitive disadvantage by raising its prices to Best Lighting.

The discovery dispute that has arisen relates to written discovery served by Best Lighting in August of 2009. That discovery included both interrogatories and document requests. Best Lighting was initially dissatisfied with the responses (or lack of responses) which it received, and after sending some letters to Pace, it decided to pursue some of its discovery from sources other than Pace - *i.e.*, from Pace's customers. After Best Lighting issued subpoenas to several of those customers, Pace objected and the parties called the Court. Best Lighting then agreed to suspend its discovery efforts from Pace's customers and to pursue information through a motion to compel. That is the motion now pending for decision.

## II. The Discovery Dispute

The parties' dispute centers around two interrogatories, Nos. 1 and 20, and two documents requests, Nos. 6 and 30. Taken as a group, all of these discovery requests relate to Best Lighting's claim that Pace misappropriated its product information and customer list, set up its own manufacturing and distributing functions for Best Lighting's products (described in the requests as an Exit Lighting Series, an Emergency Light

Series, and Emergency Ballasts), and then sold them to Best Lighting's customers in direct violation of the parties' agreement. Through these requests, Best Lighting has asked for information about Pace's tooling, the people involved with the production and sale of these products, for documents relating to the manufacture, distribution and importation of these products, and the type of packaging, advertising and literature which accompanies them. Best Lighting acknowledges that some information has been produced but asserts that it falls far short of what Pace is obligated to produce. It also makes a waiver argument because the responses to its written discovery were made after the date the parties had agreed upon for responses (although the delay ranged from a few days to a few weeks) and notes that none of the responses served to date have been verified. All of the requests at issue seek information from January 1, 2005 to the present.

Pace's primary objection to these requests is the time frame they span. It notes that the parties' agreement ran from January 10, 2007 to January 9, 2008, and that the restrictions on competition contained in the agreement are limited to that same one-year period. Consequently, it argues that "what is relevant to the claims in this action within the scope of Federal Rule 26 are sales by plaintiff or its affiliates to customers in North America in 2007." Responsive Memorandum, Doc. #61, at 5. It notes that it did produce a short summary of sales in 2006 and 2007, and more detail for sales in 2008 and 2009, and that to produce the documents underlying its summaries would be unnecessarily burdensome. As an example, the affidavit attached to the response states that sales of these three products represent only a small portion of Pace's business and to separate out these records might require one person to spend three weeks on this task. It also points out that it has produced thousands

of documents that are responsive to Best Lighting's other requests.

Pace raises an independent objection with respect to identifying those companies which supplied it with parts because it had no contractual duty not to use certain suppliers and, in any event, Best Lighting could get the same information from the products' UL certifications. It makes much the same argument concerning its box supplier. Lastly, it asserts that it has produced every document in its possession about the tooling, and that it is under no obligation to provide any additional information not contained in an existing document.

### III. Legal Analysis

The general principles involving the proper scope of discovery are well known. The Federal Rules of Civil Procedure authorize extremely broad discovery. United States v. Leggett & Platt, Inc., 542 F.2d 655 (6th Cir. 1976), cert. denied 430 U.S. 945 (1977). Therefore, Fed.R.Civ.P. 26 is to be liberally construed in favor of allowing discovery. Dunn v. Midwestern Indemnity, 88 F.R.D. 191 (S.D.Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." Coleman v. American Red Cross, 23 F.3d 1091, 1097 (6th Cir. 1994).

Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the

myriad of fact-oriented issues that arise in connection with the litigation. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340 (1978). On the other hand, the Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. <u>See Herbert v. Lando</u>, 441 U.S. 153 (1979). Additionally, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources. <u>See</u> Fed.R.Civ.P. 26(b)(2). Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules. Rule 26(b) now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...." Upon a showing of good cause, however, the Court may permit broader discovery of matters "relevant to the subject matter involved in the action." <u>Id</u>.

The Court recognizes that Pace's responses were late and that it had not obtained an extension of time either from Best Lighting or from the Court. However, the Court prefers to deal with the merits of such issues if possible, and because it will grant the motion to compel, it need not reach the waiver issue.

The Court begins with the easiest question presented, which is whether Pace has adequately responded to Interrogatory No. 1. The Court is perplexed by the assertion that if the responsive

-5-

information is not contained in an existing document, Pace has no obligation to answer this interrogatory. While a party may refer to documents in an interrogatory answer if the information is contained therein, see Fed.R.Civ.P. 33(d), there is no corresponding provision allowing a party to avoid answering an otherwise proper interrogatory simply because the responsive information is not contained in a document. If a party does attempt to respond to an interrogatory by referring the requesting party to documents in accordance with Rule 33(d), "the producing party must show that the named documents contain all of the information requested by the interrogatories." Securities & Exchange Commission v. Elfindepan, S.A., 206 F.R.D. 574, 576 (M.D.N.C. 2002). Pace has not met that burden. Further, the question appears relevant. The tooling at issue is tooling that Pace assembled for Best Lighting, and it is proper for Best Lighting to be able to learn what items exist and where they are. Therefore, Pace will be directed to respond to this interrogatory.

The next issue Pace raises is the time frame covered by these requests. The Court is persuaded by Best Lighting's argument that the information relevant to its counterclaims is not limited to the exact time frame during which the agreement was in effect. Best Lighting has asserted that its dealings with Pace, which ultimately led up to the signing of the agreement, began as early as 2005, and its suspicions about Pace's misappropriation of its information - a claim that is not dependent on the existence of the parties' agreement - were aroused as early as the end of that year. Further, if Pace is continuing to use such information in the marketing of products up to the present, as Best Lighting alleges, the damages that Best Lighting is suffering are ongoing. Thus, this time frame appears reasonable in light of the claims asserted.

Pace also contends that some or all of these requests are unduly burdensome. The assertion that a party which has asserted an affirmative claim of close to $900,000, and is defending substantial counterclaims, should not have to ask one employee to spend several weeks sorting through records is less than compelling. Further, it appears that the parties have not made a good faith effort to identify with specificity what documents Best Lighting actually wants (such as whether it wants to know the names of the ships which conveyed products to the United States). At least in part, that appears to be the direct result of Pace's refusal to consider producing any documents beyond those already made available. Because the Court has concluded that its refusal cannot be justified, Pace will be directed to meet with Best Lighting and to determine how best to satisfy Best Lighting's requests without producing categories of documents that are not being sought. Having that discussion should permit Pace to reduce any burden otherwise imposed by the requests.

Pace also argues that it should not be compelled to produce backup documentation for its sales summaries. However, summaries are generally inadmissible evidence unless access is provided to the underlying documents from which the summaries have been prepared. See Fed.R.Evid. 1006. If the evidence rules themselves reflect the lack of trustworthiness of summaries of undisclosed documents, it would seem unwarranted to prevent a party-opponent in litigation from discovering the same type of information in order to verify that the summaries are accurate. See, e.g., Fellowes, Inc. v. Aurora Corp. Of America, 2009 WL 1097063 (N.D. Ill. April 1, 2009) (ordering the production in discovery of underlying financial documents supporting audited financial statements, which are simply summaries of the underlying information). Thus, there is no justification for Pace's decision to withhold these documents. Again, a meeting at

which Pace can describe what documents actually exist, and Best Lighting can determine which ones it needs, will help to alleviate either any burden on Pace from producing these documents, and any delay in having them produced.

Finally, Pace objects to producing any information concerning its suppliers or the company which produces its boxes. It is not enough simply to assert that Best Lighting has no contractual right to control from whom Pace obtains components, however. If that information is relevant to a claim about whether Pace is using those components to make clones of Best Lighting's products, it is discoverable. The fact that there is another potential source of the same information is not pertinent unless, by directing Best Lighting to that source, the Court could eliminate unduly burdening Pace with responding to the request. That does not seem to be the case here. Pace must therefore respond to these requests.

The motion also raises an issue about verification of responses. Pace's approach appears to be that it will verify its responses when Best Lighting reciprocates. That is not how discovery works. "It is clear under the text and spirit of the discovery rules that the existence of a discovery dispute as to one matter is not a ground to delay or withhold the taking of other discovery." Jayne H. Lee, Inc. v. Flagstaff Industries Corp., 173 F.R.D. 651, 657 (D. Md. 1997). In other words, each party must independently comply with its discovery obligations. The way to address an opposing party's noncompliance is to meet and confer and then file a motion if no resolution can be reached, and not to hold discovery hostage as a method of obtaining discovery from the other side. Therefore, Pace must meets its verification obligations regardless of whether it believes that Best Lighting has done so.

IV. Disposition and Order

-8-

For the foregoing reasons, the amended motion to compel discovery filed by defendant Best Lighting, Inc. (#59) is granted. This ruling makes the first motion to compel moot and that motion (#56) shall be removed from the Court's pending motions list. Pace shall, within fourteen days, answer interrogatory #1 and provide appropriate verifications for all of its discovery responses. The parties shall also meet and confer within that same fourteen-day period to determine what documents ought to be produced in response to the other discovery requests addressed in this order. They shall then provide the Court with a proposed order that sets deadlines for producing this information and which also revises the other dates on the case schedule accordingly.

V. <u>Appeal Procedure</u>

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge